**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| OAKLEY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 13-cv-1421 |
| | ) | |
| v. | ) | |
| | ) | |
| THE PARTNERSHIPS and | ) | |
| UNINCORPORATED ASSOCIATIONS | ) | |
| IDENTIFIED ON SCHEDULE "A" and | ) | |
| DOES 1-100, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

Plaintiff Oakley, Inc. ("Oakley") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto and DOES 1-100 (collectively, "Defendants") and alleges as follows:

### I. JURISDICTION AND VENUE

1.      This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a) and (b), and 28 U.S.C. § 1331.  This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2.      Venue is proper in this Court pursuant 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in Illinois and causes harm to Oakley's business

within this Judicial District. Through at least the fully interactive commercial Internet websites operating under the Defendant Domain Names and/or the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"), each of the Defendants has targeted and solicited sales from Illinois residents by operating online stores that offer shipping to Illinois, accept payment in U.S. dollars and, on information and belief, has sold counterfeit Oakley products to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Oakley substantial injury in the State of Illinois.

## II. INTRODUCTION

3.     This action has been filed by Oakley to combat online counterfeiters which trade upon Oakley's reputation and goodwill by selling and/or offering for sale unlicensed and counterfeit products featuring the OAKLEY Trademarks. The Defendants create the Defendant Internet Stores by the thousands and design them to appear to be selling genuine Oakley products, all the while actually selling low-quality, unlicensed counterfeits to unknowing consumers. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope of their criminal counterfeiting operation. Oakley is forced to file these actions to combat Defendants' illegal counterfeiting of the registered OAKLEY Trademarks, as well as to protect unknowing consumers from purchasing low-quality, counterfeit products over the Internet. Oakley has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable OAKLEY Trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff**

4.     Plaintiff Oakley is a corporation organized and existing under the laws of the State of Washington, having its principal place of business at One Icon, Foothill Ranch, California 92610.

5.     Plaintiff Oakley is an indirect, wholly-owned subsidiary of Luxottica Group S.p.A., a publicly traded company.

6.     Oakley is an internationally-recognized manufacturer, distributor and retailer of sports eyewear, apparel, footwear, outerwear, jackets, accessories and other merchandise, all of which prominently display its famous and internationally-recognized, federally-registered trademarks, such as OAKLEY and various Icon logos.

7.     Oakley products are distributed and sold to consumers through retailers throughout the United States, including through authorized retailers in Illinois, the <Oakley.com> website which was launched in 1995, and Oakley O Stores, including one located at 835 N. Michigan Avenue in Chicago, Illinois.

8.     Oakley began using its OAKLEY Trademarks in 1975 and has continuously sold eyewear, apparel, footwear, outerwear, jackets, accessories and other merchandise under its OAKLEY and various Icon logo trademarks (collectively, the "OAKLEY Trademarks").  As a result of its long-standing use, Oakley owns common law trademark rights in its OAKLEY Trademarks.  Oakley has built substantial goodwill in and to the OAKLEY Trademarks.  The OAKLEY Trademarks are famous and valuable assets of Oakley.

9.    In addition to common law rights, Oakley has registered multiple of its trademarks with the United States Patent and Trademark Office, a non-exclusive list of which is included below.

| Registration No. | Mark | Classes | Date of Registration | Image |
|---|---|---|---|---|
| 1,519,823 | OAKLEY | 18 Athletic bags. | January 10, 1989 | OAKLEY |
| 1,521,599 | OAKLEY | 9 Sunglasses and accessories for sunglasses, namely, replacement lenses, ear stems and nose pieces. | January 24, 1989 | OAKLEY |
| 1,522,692 | OAKLEY | 25 Clothing, namely, shirts and hats. | January 31, 1989 | OAKLEY |
| 1,552,583 | OAKLEY | 9 Goggles. | August 22, 1989 | OAKLEY |
| 2,293,046 | OAKLEY | 25  Clothing, headwear and footwear and footwear, namely, sport shirts, jerseys, shirts, jackets, vests, sweatshirts, pullovers, coats, ski pants, headwear, caps, shoes, athletic footwear, all purpose sports footwear and socks. | November 16, 1999 | OAKLEY |
| 2,409,789 | OAKLEY | 14 Jewelry and time pieces, namely, watches. | December 5, 2000 | OAKLEY |
| 3,153,943 | OAKLEY | 9 Prescription eyewear, namely, sunglasses and spectacles; eyewear containing electronics devices, namely, protective eyewear, eyeglasses, sunglasses and spectacles; electronics, namely portable digital electronic devices for recording, organizing, and reviewing text, data and audio files; computer software for use in recording, organizing, and | October 10, 2006 | OAKLEY |

| | | | | |
|---|---|---|---|---|
| | | reviewing text, data and audio files on portable digital electronic devices; transmitters, receivers, speakers and parts thereof for use with cellular, wireless computer and telephone communication systems; communication devices for use on eyewear, namely earpieces, transmitters, receivers, speakers and parts thereof for use with cellular, wireless computer and telephone communication systems; wearable audio visual display, namely, protective eyewear, eyeglasses, sunglasses and spectacles containing an audio visual display; wireless telecommunications modules. | | |
| 3,771,517 | OAKLEY | 35  Retail store services and on-line retail store services featuring eyewear, replacement lenses, eyewear nosepiece kits, clothing, headwear, footwear, watches, decals, electronics devices, posters, athletic bags, handbags, backpacks and luggage. | April 6, 2010 | OAKLEY |
| 1,908,414 | OAKLEY stylized | 16 Printed material, namely decals and stickers. | August 1, 1995 | OAKLEY |

| 1,980,039 | OAKLEY stylized | 9, 25 Protective and/or anti-glare eyewear, namely sunglasses, goggles, spectacles and their parts and accessories, namely replacement lenses, earstems, frames, nose pieces and foam strips; cases specially adapted for protective and/or anti-glare eyewear and their parts and accessories clothing, headwear and footwear, namely T-shirts, sweatshirts, blouses, sweaters, sport shirts, jerseys, shorts, trousers, pants, sweatpants, ski pants, racing pants, jeans, coats, vests, jackets, swimwear, hats, visors, caps, gloves, belts, socks, sandals and shoes. | June 11, 1996 |  |
| --- | --- | --- | --- | --- |
| 1,356,297 | OAKLEY stylized | 9, 25 Goggles, sunglasses, protective pads for elbows, feet and knees. Clothing - namely t-shirts; gloves; racing pants; hats; sweatshirts; sport shirts, jackets, jeans, jerseys and ski pants, jackets, hats, gloves and socks. | August 27, 1985 |  |
| 1,519,596 | OAKLEY stylized | 9 Sunglasses and accessories for sunglasses, namely, replacement lenses, ear stems and nose pieces. | January 10, 1989 |  |

| 3,143,623 | OAKLEY stylized | 9, 25 Protective eyewear, namely spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories<br>Clothing, namely, t-shirts, beach-wear, blouses, sports shirts, jerseys, swimwear, swim trunks, shorts, underwear, shirts, pants, racing pants, ski and snowboard pants and jackets, jeans, vests, jackets, wetsuits, sweaters, pullovers, coats, sweatpants, headwear, namely, hats, caps, visors and footwear, namely wetsuit booties, shoes, sandals, athletic footwear, all purpose sports footwear, thongs and boots. | September 12, 2006 |  |
| 1,902,660 | OAKLEY and design | 16 Printed material, namely decals and stickers. | July 4, 1995 |  |

| 1,990,262 | OAKLEY and design | 9, 25 Protective and/or anti-glare eyewear, namely sunglasses, goggles, spectacles and their parts and accessories, namely replacement lenses, earstems, frames, nose pieces and foam strips; cases specially adapted for protective and/or anti-glare eyewear and their parts and accessories clothing, headwear and footwear, namely T-shirts, sweatshirts, blouses, sweaters, sport shirts, jerseys, sweatpants, ski pants, racing pants, jeans, coats, vests, jackets, hats, visors, caps | July 30, 1996 |  |

10.     The registrations for the OAKLEY Trademarks are valid, subsisting, in full force and effect, and many have become incontestable pursuant to 15 U.S.C. § 1065.  Attached hereto as Exhibit 1 is a true and correct copy of the Trademark Registration Certificates for the trademarks included in the table above.

11.     The OAKLEY Trademarks are distinctive when applied to high quality eyewear, apparel, footwear, outerwear, jackets, accessories and other merchandise, signifying to the purchaser that the products come from Oakley and are manufactured to Oakley's quality standards.  Whether Oakley manufactures the products itself or licenses others to do so, Oakley has ensured that products bearing its trademarks are manufactured to the highest quality standards.  Oakley has expended millions of dollars in advertising and promoting its products under its OAKLEY Trademarks in a variety of media throughout the world.

12.     The OAKLEY Trademarks qualify as famous marks, as that term is used in 15 U.S.C. § 1125 (c)(1), and have been continuously used and never abandoned.

13. Oakley has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the OAKLEY Trademarks. As a result, products bearing the OAKLEY Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Oakley. Oakley is a multi-million dollar operation and Oakley products have become among the most popular of their kind in the world.

**The Defendants**

14. Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets Illinois residents and has offered to sell, and on information and belief, has sold and continues to sell his/her products to consumers within the State of Illinois.

15. On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products bearing counterfeit versions of the OAKLEY Trademarks in the same transaction, occurrence, or series of transactions or occurrences. Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Oakley to learn Defendants' true identities and the exact interworking of their massive counterfeit network. In the event that Defendants and/or third party service providers provide additional credible information regarding the identities of Defendants, Oakley will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

16.     Despite Oakley's enforcement efforts online and on the ground, Defendants have persisted in creating the Defendant Internet Stores, which generate massive profits selling counterfeit Oakley products.

17.     Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine Oakley products.  Defendants' websites and marketplace listings look sophisticated and accept payment in U.S. dollars.  Numerous Defendant Domain Names also incorporate the OAKLEY trademarks into the URL, and often times, the websites include Oakley's copyright-protected content, images, and product descriptions, which makes it very difficult for consumers to distinguish such counterfeit sites from an authorized retailer.  Some of the Defendant Internet Stores even go so far as to admit to selling counterfeit products, explicitly stating that they are offering "replica" or "fake" Oakley products for sale.  Oakley has not licensed or authorized Defendants to use its OAKLEY Trademarks, and none of the Defendants are authorized resellers of genuine Oakley products.

18.     The Defendant Internet Stores accept payment via Western Union, credit card and/or PayPal and ship the counterfeit products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.  A 2011 U.S. Customs and Border Protection report on seizure statistics indicated significant increase in these types of shipments due to continued growth of websites selling counterfeit merchandise directly to consumers. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with

authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

19.     Defendants also deceive unknowing consumers by using the OAKLEY Trademarks without authorization within the content, text, and/or meta tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Oakley products.  Additionally, upon information and belief, Defendants use other illegal search engine optimization (SEO) tactics to increase website rank.  As a result, links to Defendants' websites show up at or near the top of popular search results and misdirect consumers searching for genuine Oakley products.

20.     Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores.  Many of Defendants' names and addresses used to register the Defendant Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states.  Other Defendant Domain Names use a privacy service that conceals the owners' identity and contact information.  On information and belief, Defendants constantly register new Defendant Internet Stores using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses.  Such Defendant Internet Store registration patterns are one of many tactics used by the Defendants to conceal both their identities and the full scope of Defendants' massive illegal counterfeiting operation.

21.     Even though Defendants operate under multiple fictitious names, many similarities between the Defendant Internet Stores indicate a coordinated effort to sell counterfeit Oakley products.  For example, many of the Defendant Internet Stores have virtually identical layouts, even though different aliases were used to register the respective domain names.  In

addition, counterfeit products for sale in the Defendant Internet Stores bear similar irregularities and indicia of being counterfeit to one another, suggesting that the counterfeit products were manufactured by and come from a common source and that Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, and the use of text and copyright-protected images copied from Oakley's <oakley.com> website.

22.     Defendants, without any authorization or license from Oakley, have knowingly and willfully used and continue to use the OAKLEY Trademarks in connection with the advertisement, offering for sale, and sale of counterfeit Oakley products into the United States and Illinois over the Internet. Each Defendant Internet Store offers shipping to Illinois residents and, on information and belief, each Defendant has sold counterfeit Oakley products into Illinois.

23.     Defendants' use of the OAKLEY Trademarks in connection with the advertising, distribution, offering for sale, and sale of counterfeit Oakley products, including the sale of counterfeit Oakley products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Oakley.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

24.     Oakley re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 23.

25.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered OAKLEY Trademarks

in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The OAKLEY Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Oakley's products sold or marketed under the OAKLEY Trademarks.

26.     Defendants have sold, offered to sell, marketed, distributed and advertised, and are still selling, offering to sell, marketing, distributing and advertising products bearing counterfeit reproductions of the OAKLEY Trademarks without Oakley's permission.

27.     Upon information and belief, Defendants have knowledge of Oakley's rights in the OAKLEY Trademarks, are willfully infringing and intentionally using counterfeits of the OAKLEY Trademarks. Defendants' willful, intentional and unauthorized use of the OAKLEY Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

28.     Defendants' illegal activities constitute trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

29.     Oakley has no adequate remedy at law, and if Defendants' actions are not enjoined, Oakley will continue to suffer irreparable harm to its reputation and the goodwill of its well-known OAKLEY Trademarks.

30.     The injuries and damages sustained by Oakley have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of counterfeit Oakley products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

31.     Oakley hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 30.

32.     Defendants' promotion, marketing, offering for sale and sale of counterfeit Oakley products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection or association with Oakley or to the origin, sponsorship, or approval of Defendants' counterfeit Oakley products by Oakley.

33.     By using the OAKLEY Trademarks on the counterfeit products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the counterfeit products.

34.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit products to the general public is a violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

35.     Oakley has no adequate remedy at law and, if Defendants' actions are not enjoined, Oakley will continue to suffer irreparable harm to its reputation and the goodwill of its Oakley brand.

## COUNT III
### CLAIM FOR INJUNCTIVE RELIEF UNDER THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT (15 U.S.C. § 1125(d)) AS TO THE DEFENDANTS OPERATING A DEFENDANT DOMAIN NAME INCORPORATING THE OAKLEY WORD MARK

36.     Oakley hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 35.

37.     Oakley is the exclusive owner of the OAKLEY Trademarks.  The OAKLEY Trademark registrations are in full force and effect.  Additionally, the OAKLEY Trademarks are famous marks pursuant to 15 U.S.C. § 1125 and were famous before and at the time of the registration of the Defendant Domain Names.

38.     Upon information and belief, Defendants have acted with the bad faith intent to profit from the unauthorized use of the OAKLEY Trademarks and the goodwill associated therewith by registering various domain names which are identical to, confusingly similar to or dilutive of the OAKLEY Trademarks.

39.     Defendants have no intellectual property rights in or to the OAKLEY Trademarks.

40.     Defendants' actions constitute cyberpiracy in violation of §43(d) of the Lanham Act, 15 U.S.C. §1125(d).

41.     Oakley has no adequate remedy at law, and the registration and use of the Defendant Domain Names has caused, is causing, and is likely to continue to cause substantial and irreparable injury to the public and to Oakley.

**COUNT IV**
**VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(815 ILCS § 510, et seq.)**

42.     Oakley hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 41.

43.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their products as those of Oakley, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with Oakley's products, representing that their products have Oakley's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

44.     The foregoing Defendants' acts constitute a violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510, et seq.

45.    Oakley has no adequate remedy at law, and Defendants' conduct has caused Oakley to suffer damage to its reputation and goodwill.  Unless enjoined by the Court, Oakley will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

### PRAYER FOR RELIEF

WHEREFORE, Oakley prays for judgment against Defendants as follows:

1) That Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily and permanently enjoined and restrained from:

   a. using the OAKLEY Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Oakley's Oakley product or is not authorized by Oakley to be sold in connection with the OAKLEY Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Oakley product or any other product produced by Oakley, that is not Oakley's or not produced under the authorization, control or supervision of Oakley and approved by Oakley for sale under the OAKLEY Trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendants' products are those sold under the authorization, control or supervision of Oakley, or sponsored or approved by, or connected with Oakley;

   d. further infringing the OAKLEY Trademarks and damaging Oakley's goodwill;

   e. otherwise competing unfairly with Oakley in any manner;

f.  shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Oakley, nor authorized by Oakley to be sold or offered for sale, and which bear any Oakley trademark, including the OAKLEY Trademarks or any reproductions, counterfeit copies or colorable imitations thereof;

g.  using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Internet Stores, the Online Marketplace Accounts, the Defendant Domain Names or any other domain name or online marketplace account that is being used to sell counterfeit Oakley products; and

h.  operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Oakley product or not authorized by Oakley to be sold in connection with the OAKLEY Trademarks; and

2)  That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Oakley a written report under oath setting forth in detail the manner in which Defendants have complied with paragraph 1, a through h, supra;

3)  Entry of an Order that the domain name registries for the Defendant Domain Names, namely VeriSign, Inc., Neustar, Inc., Afilias Limited and the Public Interest Registry, within two (2) business days of receipt of this Order, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of Oakley's selection until further ordered by this

Court, and that the domain name registrars take any steps necessary to transfer the Defendant Domain Names to a registrar of Oakley's selection until further ordered by this Court;

4) Entry of an Order that, upon Oakley's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces, Internet search engines, Web hosts, social media websites, domain-name registrars and domain name registries that are provided with notice of the injunction, cease facilitating access to any and all websites and accounts through which Defendants engage in the sale of counterfeit products bearing the OAKLEY Trademarks;

5) That Defendants account for and pay to Oakley all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged and that the amount of damages for infringement of the OAKLEY Trademarks be increased by a sum not exceeding three times the amount thereof as provided by law;

6) In the alternative, that Oakley be awarded statutory damages pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the OAKLEY Trademarks and $100,000 per domain name pursuant to 15 U.S.C. § 1117(d);

7) That Oakley be awarded its reasonable attorneys' fees and costs; and

8) Award any and all other relief that this Court deems just and proper.

18

Dated this 22nd day of February 2013.

Respectfully submitted,

   /s/ Justin R. Gaudio
Kevin W. Guynn
Amy C. Ziegler
Justin R. Gaudio
Greer, Burns & Crain, Ltd.
300 South Wacker Drive
Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
kguynn@gbclaw.net
aziegler@gbclaw.net
jgaudio@gbclaw.net